```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF SOUTH CAROLINA
             ANDERSON/GREENWOOD DIVISION


UNITED STATES OF AMERICA,       }  8:19-CR-00181-DCC-3
                                }
        VERSUS                  }  APRIL 11, 2019
                                }
JAMAL DEMARCUS LATIMER          }  GREENVILLE, SC
--------------------------------}



       BEFORE THE HONORABLE JACQUELYN D. AUSTIN
            UNITED STATES MAGISTRATE JUDGE


                TRANSCRIPT OF PROCEEDINGS
                 BOND/DETENTION HEARING



A P P E A R A N C E S:

FOR THE GOVERNMENT: LEESA WASHINGTON, AUSA
                    U.S. ATTORNEY'S OFFICE
                    55 BEATTIE PLACE
                    GREENVILLE, SC 29601

FOR THE DEFENDANT:  STEPHANIE A. RAINEY, ESQUIRE
                    RAINEY AND BROWN
                    145 NORTH CHURCH STREET
                    SPARTANBURG, SC 29306




        (ELECTRONIC SOUND RECORDING TRANSCRIPTION)




------------------------------------------------------
               BETH A. KRUPA, RPR, CRR
             UNITED STATES COURT REPORTER
                 401 WEST EVANS STREET
                  FLORENCE, SC  29501
```

*Beth A. Krupa, RPR, CRR*

1  ATTORNEY WASHINGTON: Your Honor, the government
2  calls United States of America versus Jamal Demarcus
3  Latimer, docket No. 8:19-181. Mr. Latimer is present in the
4  courtroom with counsel Stephanie Rainey.
5  Your Honor, at this defendant's appearance on the
6  26th of last month, the government moved for detention. The
7  government is prepared to go forward with its motion this
8  morning. I've talked with Ms. Rainey and she agrees or
9  consents to the government just proffering the evidence that
10  it would put on through a case agent normally and make the
11  agent available for any questioning that the defendant might
12  have.
13  So if that suits the Court, I'll briefly summarize
14  the evidence against this particular defendant and why we
15  believe that he should be detained.
16  THE COURT: Well, it was my understanding we were
17  trying to work out allowing him some time to be released so
18  that he can take care of some medical issues.
19  ATTORNEY WASHINGTON: Yes.
20  THE COURT: Well, I was wondering, do you want to
21  do the detention hearing now or once he's had an opportunity
22  to go --
23  ATTORNEY WASHINGTON: I think it's probably
24  preferable to just go forward with the motion and then have
25  Your Honor rule on it and if the Court decides to set a bond

so that he can attend to his medical issues --

THE COURT: Okay.

ATTORNEY WASHINGTON: -- then that issue can be dealt with also.

THE COURT: Okay. Ms. Rainey?

ATTORNEY RAINEY: No objection to proceeding that way.

THE COURT: Okay. I'll have the government proffer its evidence.

ATTORNEY WASHINGTON: Thank you, Your Honor. Judge, the government does believe this is a presumption case. The grand jury has found probable cause that this defendant committed at least three violations for which the maximum possible penalty is life.

He's charged in Count 1 of an indictment that charges possession with intent to distribute, conspiracy to possess with intent to distribute heroin, cocaine and Fentanyl. He's looking at ten to life on that charge, Your Honor.

He's also charged in Count 10 of the indictment, violation of Title 21 United States Code Section 841(a)(1), that substantive offense, that's a possession with intent to distribute Fentanyl. That carries ten to life.

And he's charged in Count 13 which is maintaining a stash house. The maximum possible penalty for that

1  offense, Judge, is 20 years.  For those reasons, Your Honor,
2  the government believes that the presumption and the Bail
3  Reform Act does apply.
4          Just very briefly on the facts of this case, I
5  know Your Honor has presided over previous hearings and has
6  reviewed various search warrants and affidavits for search
7  warrants in the case during the investigation of the case.
8          But Your Honor will recall on September 25th of
9  last year, law enforcement received information that this
10 defendant contacted a source, unbeknownst to him, a source
11 working for DEA in Las Cruces, New Mexico looking to
12 purchase a significant amount of heroin and cocaine.  That
13 is, 10 kilograms of heroin and 10 kilograms of cocaine.
14         Mr. Latimer specified white China heroin.  White
15 China heroin is a term used to refer to heroin of pure,
16 close to pure quality and also heroin combined with a
17 mixture of Fentanyl.
18         It -- the government learned later on, Your Honor,
19 that -- and Mr. Latimer during the recorded meeting with the
20 source was to use the heroin, the white China heroin to
21 press pills, turn the powder substance into pills, which is
22 inherently dangerous, Judge.
23         And in this particular case, the individuals
24 charged in the indictment were using basically a home lab.
25 The main defendant, Mr. McGowan, was the primary

1  manufacturer of the pills.  He has no pharmacological
2  experience, no knowledge of pharmacy -- of pressing of pills
3  or any other pharmacological experience or knowledge.
4         Judge, it's particularly dangerous because someone
5  in that position or somebody manufacturing pills under those
6  circumstances, the dosages could vary from pill to pill and
7  I think it's common knowledge these days that Fentanyl is
8  reported to be 50 to a hundred times stronger than morphine.
9         And to a user, one who is intending to use
10 Oxycodone or some other counterfeit prescription pill or one
11 who is intending to use heroin would be -- not be on notice
12 as to the dosage he or she might be ingesting if using a
13 pill purchased by someone who was manufacturing in a home
14 lab.
15         Nevertheless, Judge, this defendant proceeded with
16 what the individual whom he thought was a Mexican source for
17 cocaine and heroin.  Mr. Latimer arranged to fly out to El
18 Paso to meet with this source.  It turns out the source was
19 at that time working for DEA Lac Cruces.
20         During the recorded meeting, Mr. Latimer went into
21 great detail about the operation here in South Carolina and
22 how the powdered cocaine and Fentanyl was to be distributed
23 and how they had distributed through night clubs in and
24 around Greenwood.
25         After the meeting or at the end of the meeting,

1  Mr. Latimer had arranged the purchase of 10 kilograms of
2  cocaine and heroin in exchange for $760,000.  That delivery
3  was scheduled to occur in Greenville on October 23rd.
4            Law enforcement set up surveillance on
5  October 23rd and indeed Mr. Latimer and some of his other
6  codefendants gathered together, compiled the money, and
7  arranged to meet still individuals whom they thought were
8  cocaine and heroin sources to consummate the transaction
9  that had been arranged in El Paso.
10           En route to the transaction or supposed
11 transaction, law enforcement seized over a million dollars
12 from Mr. Latimer and others charged in the indictment.  Your
13 Honor, in December, late December, December 28th of last
14 year, Judge Coggins issued an order authorizing the
15 interception of wire communications over a phone used by
16 Mr. Latimer at the time.
17           During the interception period, agents learned of
18 a seizure that occurred in -- actually prior to the order
19 being in effect, agents learned of a seizure that occurred
20 in North Carolina involving an individual named Deandre
21 Miles and learned that Mr. Miles had actually identified
22 Mr. Latimer as a source of the over 10,000 pills that law
23 enforcement seized from him in the Charlotte, North Carolina
24 area.
25           Your Honor, those pills that were seized from

1   Mr. Miles were, indeed provided by Mr. Latimer and tested
2   positive for the presence of Fentanyl.  In addition, Judge,
3   the Fentanyl -- the Fentanyl pills that were seized from
4   Mr. Miles in North Carolina provided by this defendant, the
5   government believes were supplied by Detric McGowan,
6   supplied and manufactured by Detric McGowan.
7           The monikers or labels on the pills that
8   Mr. McGowan has admitted to manufacturing included the V and
9   the 4812 on one side and were consistent with all other
10  seizures of pills that the government believes were
11  manufactured by Mr. McGowan.
12          Judge, the government believes that the Court is
13  to consider both the strength of the evidence and other
14  factors under the Bail Reform Act.  The government believes
15  that the case is strong against this particular defendant
16  and the government is aware of no evidence that is
17  sufficient to rebut the presumption under the Bail Reform
18  Act and believes that detention is the appropriate -- or no
19  bond is appropriate for the defendant.  He's both a flight
20  risk and danger to the community given the nature of the
21  charges.
22          ATTORNEY RAINEY:  Thank you, Your Honor, may it
23  please the Court.  As it relates to my motion, I did make a
24  motion for bond concerning Mr. Latimer.  There are a few
25  factors to consider in the bond.

1           First of all, Mr. Latimer is a life-long resident
2  of Greenwood County.  His family is actually here in the
3  Court.  They've been present at every court hearing.
4  They're very active and engaged and concerned about his
5  well-being as well as resolving this case.
6           Secondly, Mr. Latimer has no criminal history.  He
7  has a few speeding tickets, traffic violations, but no
8  serious criminal history and that is a factor that the Court
9  must consider under the Bail Reform Act.
10          Thirdly, Mr. Latimer turned himself in.  When he
11 discovered that he was a wanted individual, I contacted
12 Ms. Washington, Ms. Washington contacted the DEA agent,
13 within an hour and a half Mr. Latimer had turned himself in.
14          Thirdly or fourthly, most importantly, Mr. Latimer
15 has a series of medical conditions that require attention.
16 On February 27th he was scheduled for a laparoscopic surgery
17 with repair of his esophageal hernia.
18          His medical conditions are he has a hiatal hernia,
19 he has hypertension, he has reflux gastritis, he has an
20 ulcer of the stomach and intestines.  Your Honor, we have
21 taken the liberty to schedule appointments with Greenwood
22 endo -- endo --
23          THE COURT:  I know what you're trying to say.
24          ATTORNEY RAINEY:  Endoscopy center, that
25 appointment is scheduled for Wednesday the 17th at 1:45.

1  His doctor will be Dr. Gilchrist.  We've also taken the
2  liberty to schedule an appoint with the surgeon which will
3  be on Tuesday the 16th at 4:00 p.m.
4          THE COURT:  April?
5          ATTORNEY RAINEY:  Yes, ma'am.  Dr. Gilchrist is
6  his primary care physician.  He is a doctor that originally
7  set him up for the surgical reference.  The Greenville
8  Hospital system will probably more than likely be performing
9  the surgery.
10         Your Honor, in considering the factors under the
11 Bail Reform Act, we would like to just say again Mr. Latimer
12 has no criminal history.  He does not represent a flight
13 risk because he turned himself in.  Nobody had to go out and
14 look for him.
15         Additionally, one of the factors that the Court
16 must consider is his physical condition, that factor plays
17 majorly into our motion.  He is not able to hold food down
18 at the jail.
19         He's reported -- I actually have medical notes
20 from the jail where he's reported to the nurses that he's
21 having problems.  They're trying to get him his medication,
22 but his medication makes him sleepy.
23         He still -- once he eats, he's still vomiting
24 blood and different sources, so he's desperately in need of
25 some surgery.  His doctor saw fit to schedule an appointment

1  even considering his condition at this point, where he's
2  located.
3           So, Judge, we would ask for a secured bond.  His
4  family is here in the courtroom.  They have certain
5  properties.  It's not highly valued property, but I think
6  his grandmother is willing to put up her property at
7  Reynolds Avenue and the value of that is 75,000.
8           So we would ask for a secured bond.  I don't think
9  that he's a flight risk.  I'm certain that he will be in
10 court every time.  He doesn't represent a threat to anybody
11 in this case, any defendant, potential witness or a
12 potential juror.
13          So based on the foregoing, Your Honor, we ask just
14 for a secured bond so that he can get the treatment that he
15 needs and so that he can really get healthy.  He's wanting
16 to deal with the case, but he's just not in a condition
17 where he's able to at this time.  Thank you, Your Honor.
18          THE COURT:  This is for the government and
19 Ms. Rainey, my dilemma here is I do believe that the
20 government has met their burden for detention, however, I
21 also believe that Mr. Latimer should be given an opportunity
22 to go out and get the surgery, especially since it was
23 scheduled prior to his arrest.
24          Based on the nature of the charges and the
25 allegations against him, the facts that the government has

1  laid out, I don't find he's a flight risk, but I do find
2  that he's a danger to the community, so that being said, if
3  you all can help me out here.  I mean what I could do is
4  just take the motion for detention under advisement, but in
5  the meantime let him -- give him a bond to go out and get
6  the treatment taken care of.
7         Then once he's had the surgery and had an
8  opportunity to recover, come back and rule at that time.  Or
9  if the government is insistent that I rule now, I can go
10 ahead and make a ruling now and maybe come back and revisit
11 after he's had the surgery.
12         I'm -- I believe that he should have an
13 opportunity to go get this, to get his health back in order.
14 Well, if you all want to talk and tell me how you want to
15 handle this.
16         (Brief pause.)
17         ATTORNEY WASHINGTON:  I think -- Judge, just given
18 for procedural purposes, I think it probably would be best
19 that the Court just rule on the government's motion.
20         THE COURT:  Okay.
21         ATTORNEY WASHINGTON:  I understand that the Court
22 is inclined to set a bond on this particular defendant, so
23 we can move to that phase of this hearing, but that at least
24 we've resolved the detention issue.
25         THE COURT:  Right.  Okay.

1                ATTORNEY RAINEY:  We're in agreement.
2                THE COURT:  Okay.  So what I'm going to do for
3    purposes of today is I'm going to set bond at $75,000
4    secured with standard conditions, but I am going to impose
5    home detention with location monitoring which will be GPS
6    monitoring.
7                I'm also going to require that Mr. Latimer keep
8    probation up to date with the status of your medical
9    treatment on a weekly basis.  I understand from Ms. Rainey
10   that you've got appointments scheduled for the 17th and the
11   16th right now.
12               So whenever the schedule -- the surgery is
13   scheduled, once the surgery has been completed, then we will
14   reconvene and have a status conference and just kind of see
15   where -- how he's doing on bond.
16               Like I said, my concern is with the amount of
17   product, drugs, the nature of the drugs that were being
18   moved, he's a danger to the community and that's a concern
19   for me.  But since I'm kind of being put in the position
20   where I have to rule today, I'm going to set a bond so that
21   he can get his health taken care of.
22               ATTORNEY WASHINGTON:  Would Your Honor consider
23   home confinement rather than home detention?
24               THE COURT:  Home confinement would require that if
25   he has to go to a doctor's appointment then they would have

```
1    to get -- you can help me with this -- probation would have
2    to call me to get permission for him to go to a doctor's
3    appointment.  Whereas if I do home detention, then he would
4    just have to go through probation and they can handle it and
5    make the decision.  Am I saying that accurately?
6              ATTORNEY WASHINGTON:  My only concern is that his
7    leaving whatever residence he's to live at or be confined in
8    to serve this home detention period that he not leave for
9    any other reason other than doctor's appointments.
10             That's why I thought that home confinement might
11   be more suitable.  I don't -- this defendant does not have a
12   job and he's not in school.
13             THE COURT:  The home detention does the same
14   thing, right?
15             ATTORNEY WASHINGTON:  As long as his only basis
16   for leaving, Your Honor is only allowing him to leave the
17   residence to attend to doctor's appointments and --
18             THE COURT:  Talk to his lawyer.  Mr. Latimer, I
19   was going to call you Jamal.  So I'm trying to give you an
20   opportunity here today.  I don't want you sitting in the
21   jail getting worse since this was already a condition that
22   you had before you were arrested.
23             You can stay seated, either one, so I'm trying to
24   give you an opportunity to go get your health taken care of,
25   but I'm going to need you to follow the conditions of bond
```

1   because I don't, you know, before you have your surgery for
2   the government to come back in here and say he's not
3   following the conditions, lock him back up.  Do you
4   understand what I'm saying?
5           Make sure you go over the conditions of bond with
6   Ms. Rainey.  If you have any questions, ask her.  She can
7   guide you on how to make sure you stay compliant, but home
8   detention means that -- and I'm assuming that probation has
9   already confirmed an address?
10          ATTORNEY RAINEY:  His mom is here.  She can
11  confirm it with them.
12          THE COURT:  Okay.  I'll just have you confirm the
13  address with probation before he leaves, but that just means
14  that you are at that address unless you have a doctor's
15  appointment that you need to go to, those doctor's
16  appointments need to be confirmed with probation, so you
17  don't leave your house unless you're going to a doctor's
18  appointment.
19          If you have an appointment with your attorney,
20  call probation, let them know that, you know, what time it
21  is, where you need to go and when you're going to be back,
22  okay.  Am I missing anything?
23          ATTORNEY WASHINGTON:  Is Your Honor going to allow
24  Mr. Latimer to be released pending the bond being posted?  I
25  understand there might be some time needed to make sure that

```
 1    the bond or the property that's being used to secure the
 2    bond is sufficient.
 3              ATTORNEY RAINEY:  We would move, Your Honor, that
 4    he be released pending the house being certified as
 5    appropriate for bond.  Again, he is going to submit -- he
 6    will be on home detention, home confinement as of today
 7    before he's allowed to leave, so I don't --
 8              THE COURT:  Is it possible for them to get the
 9    records to the clerk's office today to show the value, that
10    it doesn't have any liens on it?  I would like for the bond
11    to be in place before he's released.
12              ATTORNEY RAINEY:  I have an appraisal report, but
13    I will check about the liens and everything else.
14              THE COURT:  Okay.
15              (Brief pause.)
16              THE COURT:  Ms. Rainey, the clerk has informed me
17    that they need records from the tax office.
18              ATTORNEY RAINEY:  This is the tax office, would
19    that be sufficient?  Yes, ma'am.  She's going to go get it
20    today.  They're going back to Greenwood, but they will make
21    their way back and try to get here as soon as possible.  Can
22    they print it out online?  Would that be sufficient?
23              (Brief pause.)
24              ATTORNEY RAINEY:  They'll go to Greenwood.
25    They'll get it done today as soon as possible.
```

*Beth A. Krupa, RPR, CRR*

```
1              THE COURT:  Okay.  Just as soon as they can get it
2    done, but he will not be released until that is confirmed.
3              ATTORNEY RAINEY:  Yes, ma'am.
4              THE COURT:  Anything further?
5              ATTORNEY RAINEY:  Nothing from the defendant, Your
6    Honor.
7              THE COURT:  Okay.  Anything further from
8    probation?
9              PROBATION OFFICER:  No, Your Honor.
10             THE COURT:  Okay.  Thank you.
11             (Hearing was concluded.)
12   ****************************************************
```

13                          CERTIFICATE OF REPORTER

14

15        I certify that the foregoing is a correct transcript of

16   the proceedings, to the best of my ability, taken from

17   electronic sound recordings in the above-entitled matter.

18

19    /S/ Beth A. Krupa_____              _____May 1, 2019_____

20    Beth A. Krupa, RPR, CRR               Date
      Official Court Reporter
21    United States District Court
      District of South Carolina

22

23

24

25

*Beth A. Krupa, RPR, CRR*