UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

```
* * * * * * * * * * * * * *
UNITED STATES OF AMERICA,    * CRIMINAL NO. 8:19-CR-0181
                             * OCTOBER 16, 2019  1:23 P.M.
             Plaintiff,      * GUILTY PLEA HEARING
                             *
vs.                          *
                             *
JAMAL DEMARCUS LATIMER,      * Before:
                             * HON. DONALD C. COGGINS, JR.
                             * UNITED STATES DISTRICT JUDGE
             Defendant.      * DISTRICT OF SOUTH CAROLINA
* * * * * * * * * * * * * *
```

APPEARANCES:

For the Plaintiff:          LEESA WASHINGTON, AUSA
                            United States Attorneys Office
                            District of South Carolina
                            55 Beattie Place, Suite 700
                            Greenville, SC  29601


For Defendant Jamal Demarcus Latimer:

                            STEPHANIE A. RAINEY, ESQUIRE
                            Rainey & Brown Law Firm
                            145 North Church Street, Unit 39
                            Spartanburg, SC  29306



Court Reporter:             Michele E. Becker, RMR, CRR, RPR
                            201 Magnolia Street
                            Spartanburg, SC  29306
                            Michele_Becker@scd.uscourts.gov
                            (864) 905-8888



        Proceedings recorded by mechanical stenography,
transcript produced by computer.
        Michele E. Becker, RMR, CRR, RPR
            United States District Court
            District of South Carolina

1    (Court convened at 1:24 p.m.)

2    (Proceedings were held but not transcribed at this time.)

3    THE COURT:  All right.  It looks like we have change

4    of pleas in connection with Mr. Latimer and Ms. Suber, and I

5    will ask those folks and their attorneys to please come

6    forward.

7    THE CLERK:  Mr. Latimer, please raise your right hand

8    and state your name for the record.

9    DEFENDANT LATIMER:  Jamal Demarcus Latimer.

10    (The defendant is duly sworn on oath.)

11    DEFENDANT LATIMER:  Yes.

12    THE CLERK:  And Ms. Suber, please raise your right

13    hand and state your name for the record.

14    DEFENDANT SUBER:  Valencia Danielle Suber.

15    (The defendant is duly sworn on oath.)

16    DEFENDANT SUBER:  Yes.

17    THE COURT:  Thank you.  Mr. Latimer, it's my

18    understanding from your attorney that you wish to change your

19    plea today and enter a plea of guilty; is that correct?

20    DEFENDANT LATIMER:  Yes, sir.

21    THE COURT:  All right.  And Ms. Suber, it's my

22    understanding that you wish to enter a plea of guilty today;

23    is that correct, ma'am?

24    DEFENDANT SUBER:  Yes, sir.

25    THE COURT:  All right.  Ms. Rainey, let me begin with

Michele E. Becker, RMR, CRR, RPR
United States District Court
District of South Carolina

1    you.  Have you had an adequate time to confer with Mr. Latimer

2    and to discuss this matter with him?

3              MS. RAINEY:  I have, Your Honor.

4              THE COURT:  And have you advised him of his

5    constitutional rights and explained the court process to him?

6              MS. RAINEY:  Yes, sir.  I have.

7              THE COURT:  And do you believe that he understands

8    what he's doing today?

9              MS. RAINEY:  I do, Your Honor.

10             THE COURT:  Okay.  Mr. Brehm, have you had an

11   opportunity to speak with Ms. Suber regarding this matter?

12             MR. BREHM:  Yes, I have, Your Honor.

13             THE COURT:  All right.  Do you believe that you will

14   need any additional time to confer with her?

15             MR. BREHM:  I do not.

16             THE COURT:  Have you advised her of her

17   constitutional rights and explained the Court process to her?

18             MR. BREHM:  Yes, sir, Your Honor.

19             THE COURT:  And do you believe that she understands

20   what she's doing here today?

21             MR. BREHM:  I do.

22             THE COURT:  All right.  Mr. Latimer and Ms. Suber,

23   before I can accept your pleas of guilty, it's necessary for

24   me to make sure that you are pleading guilty voluntarily,

25   knowingly and freely, because by pleading guilty you're going

1    to be giving up certain constitutional rights and legal

2    defenses that you my have under the law.  I'm going to have to

3    ask you some questions about that.  It is very important that

4    you listen carefully to all of my questions and everything

5    else that is said during this hearing.  If at any time I give

6    you information which is different from what someone else may

7    have told you, even if it's what your lawyer told you, you

8    need to rely upon what I tell you during this hearing.

9          If I ask you a question that you do not understand or

10   use a word or phrase that you do not understand, you need to

11   let me know at once so that I can explain it to you.  If you

12   do not, I'm going to presume that you understand all of my

13   questions and everything else that is said during this

14   hearing.

15         And finally, if at any time during this hearing you

16   need to stop and take an opportunity to confer privately with

17   your attorney, all you need to do is let me know and I'll be

18   happy to allow you that opportunity.

19         Mr. Latimer, do you understand that?

20         DEFENDANT LATIMER:  Yes, sir.

21         THE COURT:  Ms. Suber?

22         DEFENDANT SUBER:  Yes, sir.

23         THE COURT:  All right.  Do you understand that you

24   are now under oath, and everything that you tell me from here

25   on out in this hearing is material to your case so that if you

1  give a false answer to any of my questions, that answer could

2  be used against you in a later proceeding which could include

3  a prosecution for perjury or for making a false statement to

4  the Court?  Do you understand, Mr. Latimer?

5          DEFENDANT LATIMER:  Yes, sir.

6          THE COURT:  Ms. Suber?

7          DEFENDANT SUBER:  Yes, sir.

8          THE COURT:  All right.  Mr. Latimer, please state

9  your full name, sir.

10          DEFENDANT LATIMER:  Jamal Demarcus Latimer.

11          THE COURT:  And how old are you?

12          DEFENDANT LATIMER:  34.

13          THE COURT:  How far did you go in school?

14          DEFENDANT LATIMER:  Two years in junior college.

15          THE COURT:  And where were you born?

16          DEFENDANT LATIMER:  Greenwood, South Carolina.

17          THE COURT:  Do you have any difficulty in

18  understanding or communicating in the English language?

19          DEFENDANT LATIMER:  No, sir.

20          THE COURT:  Ms. Suber, please state your full name.

21          DEFENDANT SUBER:  Valencia Danielle Suber.

22          THE COURT:  How old are you?

23          DEFENDANT SUBER:  35.

24          THE COURT:  And how far did you go in school?

25          DEFENDANT SUBER:  Bachelor of science.

1          THE COURT:  And where were you born?

2          DEFENDANT SUBER:  Greenwood, South Carolina.

3          THE COURT:  And do you have any difficulty whatever

4  in communicating in the English language?

5          DEFENDANT SUBER:  No, sir.

6          THE COURT:  All right.  Now, this next group of

7  questions that I'm going to ask you are questions that I have

8  to ask of every defendant, so please don't be offended that

9  I'm asking you.

10          Have you used any alcohol or drugs within the last 24

11  hours, Mr. Latimer?

12          DEFENDANT LATIMER:  No, sir.

13          THE COURT:  Ms. Suber?

14          DEFENDANT SUBER:  No, sir.

15          THE COURT:  Are you under the influence today of any

16  alcohol, drugs, medication or any other substance, or have any

17  mental, physical, or emotional condition which would keep you

18  from understanding what you are doing, Mr. Latimer?

19          DEFENDANT LATIMER:  No, sir.

20          THE COURT:  Ms. Suber?

21          DEFENDANT SUBER:  No, sir.

22          THE COURT:  All right.  I did not think that you

23  were, and I so find for the record based upon your appearance,

24  demeanor, and responses to my questions.

25          Now, are there any medications that have been

                    Michele E. Becker, RMR, CRR, RPR
                       United States District Court
                        District of South Carolina

1  prescribed for you by a doctor or other healthcare provider

2  that you are supposed to be taking that you are not now taking

3  as directed, Mr. Latimer?

4          DEFENDANT LATIMER:  No, sir.

5          THE COURT:  Ms. Suber?

6          DEFENDANT SUBER:  No, sir.

7          THE COURT:  Have you ever been treated for any type

8  of mental illness or addiction to narcotic drugs, Mr. Latimer?

9          DEFENDANT LATIMER:  No, sir.

10          THE COURT:  Ms. Suber?

11          DEFENDANT SUBER:  No, sir.

12          THE COURT:  Have you recently been seen or treated by

13  any doctor, psychiatrist, psychologist, or mental health

14  professional, Mr. Latimer?

15          DEFENDANT LATIMER:  Yes, sir.

16          THE COURT:  Tell me about that.

17          DEFENDANT LATIMER:  I just had surgery on my

18  esophagus.

19          THE COURT:  Okay.  Are you healing okay?

20          DEFENDANT LATIMER:  Yes, sir.

21          THE COURT:  All right.  Anything about that surgery

22  or any medication that may have been prescribed for it that

23  you believe would affect your ability to understand what you

24  are doing here today?

25          DEFENDANT LATIMER:  No, sir.

1       THE COURT:  Are you prepared to go forward today?

2       DEFENDANT LATIMER:  Yes, sir.

3       THE COURT:  All right.  Ms. Suber, have you recently

4  been treated by any doctor, psychiatrist, or other mental

5  health professional?

6       DEFENDANT SUBER:  No, sir.

7       THE COURT:  All right.  Are you satisfied with the

8  services of your attorney in this matter, Mr. Latimer?

9       DEFENDANT SUBER:  Yes, sir.

10      THE COURT:  Ms. Suber?

11      DEFENDANT SUBER:  Yes, sir.

12      THE COURT:  Have you had sufficient time to meet with

13  your lawyer and to discuss your case, Mr. Latimer?

14      DEFENDANT LATIMER:  Yes, sir.

15      THE COURT:  Ms. Suber?

16      DEFENDANT SUBER:  Yes, sir.

17      THE COURT:  Has your attorney advised you of your

18  rights and explained the Court process to you, Mr. Latimer?

19      DEFENDANT LATIMER:  Yes, sir.

20      THE COURT:  Ms. Suber?

21      DEFENDANT SUBER:  Yes, sir.

22      THE COURT:  Has your attorney explained the possible

23  consequences that may take place as a result of this

24  proceeding, Mr. Latimer?

25      DEFENDANT LATIMER:  Yes, sir.

1          THE COURT:  Ms. Suber?

2          DEFENDANT SUBER:  Yes, sir.

3          THE COURT:  Have you told your attorney everything

4   that you want or need to tell him or her about your case,

5   Mr. Latimer?

6          DEFENDANT LATIMER:  Yes, sir.

7          THE COURT:  Ms. Suber?

8          DEFENDANT SUBER:  Yes, sir.

9          THE COURT:  Has your attorney done everything you

10  have asked him or her to do for you, Mr. Latimer?

11          DEFENDANT LATIMER:  Yes, sir.

12          THE COURT:  Ms. Suber?

13          DEFENDANT SUBER:  Yes, sir.

14          THE COURT:  Is there anything else that you would

15  like for your attorney to do for you before we proceed today,

16  Mr. Latimer?

17          DEFENDANT LATIMER:  No, sir.

18          THE COURT:  Ms. Suber?

19          DEFENDANT SUBER:  No, sir.

20          THE COURT:  Do you authorize and request that your

21  attorney speak on your behalf during this hearing today,

22  Mr. Latimer?

23          DEFENDANT LATIMER:  Yes, sir.

24          THE COURT:  Ms. Suber?

25          DEFENDANT SUBER:  Yes, sir.

1       THE COURT:  All right.  Ms. Rainey, taking into

2  consideration everything you know about this case, do you

3  agree with Mr. Latimer's decision to plead guilty?

4       MS. RAINEY:  I do, Your Honor.

5       THE COURT:  And do you have any concerns about his

6  competence to make that decision?

7       MS. RAINEY:  None whatsoever.

8       THE COURT:  All right.  Ms. Washington, any concerns

9  as to competency from the government?

10      MS. WASHINGTON:  None as to either defendant, Your

11  Honor.

12      THE COURT:  I find that the Defendant Jamal Demarcus

13  Latimer is competent to plead guilty to the charges against

14  him, and I so find for purposes of this record.

15      Mr. Brehm, with respect to Ms. Suber, taking into

16  consideration everything you know about this case, do you

17  agree with her decision to plead guilty?

18      MR. BREHM:  I do, Your Honor.

19      THE COURT:  Do you have any concerns about her

20  competence to make that decision?

21      MR. BREHM:  No, sir.  I do not.

22      THE COURT:  All right.  I find that the Defendant

23  Valencia Danielle Suber is competent to plead guilty to the

24  charges against her, and so I find for purposes of this

25  record.

1    Now, each of you, I believe, is pleading guilty to

2  one count of the superseding indictment in this case.

3    Mr. Latimer, I'm going to ask you first, have you

4  received a copy of the superseding indictment that is the

5  document in which the government lays out the charges against

6  you?

7    DEFENDANT LATIMER:  Yes, sir.

8    THE COURT:  And have you had a sufficient opportunity

9  to review and discuss that indictment as well as your case in

10 general with your attorney?

11   DEFENDANT LATIMER:  Yes, sir.

12   THE COURT:  Has she gone over the charges with you

13 and explained them to you?

14   DEFENDANT LATIMER:  Yes, sir.

15   THE COURT:  Has she answered any questions that you

16 have regarding the charges against you?

17   DEFENDANT LATIMER:  Yes, sir.

18   THE COURT:  Ms. Suber, have you received a copy of

19 the superseding indictment in your case?

20   DEFENDANT SUBER:  Yes, sir.

21   THE COURT:  And have you had an adequate opportunity

22 to go over it and review it with your attorney as well as

23 reviewing your case in general?

24   DEFENDANT SUBER:  Yes, sir.

25   THE COURT:  And has he explained the charges to you

1   and answered all of your questions concerning the indictment?

2           DEFENDANT SUBER:  Yes, sir.

3           THE COURT:  All right.  At this time in order to make

4   sure that you understand the nature of the charges to which

5   you would be pleading guilty, the essential elements that the

6   government would have to prove to prove you guilty if a trial

7   were held, and the maximum possible penalties you may face

8   upon conviction, I'm going to ask the Assistant U.S. Attorney

9   to go over the charge to which each of you is pleading guilty,

10  the essential elements of that charge, and the maximum

11  possible penalties that you may face.  And we will begin with

12  Mr. Latimer.

13          MS. WASHINGTON:  Your Honor, Mr. Latimer is offering

14  to plead guilty to Count 1 of the superseding indictment.  In

15  Count 1 the grand jury charges that beginning at a time

16  unknown to the grand jury but beginning at least in or around

17  2016, and continuing thereafter up to the date of the

18  superseding indictment in this District and elsewhere, that

19  Mr. Latimer along with the others listed in Count 1 of the

20  superseding indictment knowingly and intentionally did

21  combine, conspire, and agree together and have a tacit

22  understanding with each other and others, both known and

23  unknown to the grand jury, to knowingly, intentionally and

24  unlawfully possess with intent to distribute, heroin, cocaine,

25  marijuana, and a substance commonly known as Fentanyl, a

1    substance known as ANPP, which is a controlled substance and a

2    precursor for Fentanyl and Tramadol.

3         With respect to Mr. Latimer, the amount involved in

4    the conspiracy attributable to him as a result of his own

5    conduct and the conduct of other conspirators reasonably

6    foreseeable to him is a kilogram or more of a mixture or

7    substance containing a detectable amount of heroin, which is a

8    Schedule I controlled substance, 5 kilograms or more of a

9    mixture or substance containing a detectable amount of

10   cocaine, 400 grams or more of a mixture or substance

11   containing a detectable amount of substance commonly known as

12   Fentanyl, and 400 grams or more of a mixture or substance

13   containing a detectable amount of ANPP, all of which are

14   Schedule II controlled substances.

15        Your Honor, the indictment alleges that Mr. Latimer

16   committed the offense in Count 1 of the indictment in

17   violation of Title 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and

18   846.  Had the case proceeded to trial, the government would

19   have to prove, number one, that the conspiracy described in

20   the indictment was willfully formed and was existing at or

21   about the alleged time; that Mr. Latimer knowingly and

22   voluntarily became a part of the conspiracy; and that

23   Mr. Latimer distributed a quantity of the substances equal to

24   or in excess of the amounts charged in Count 1.  That he

25   agreed to assist in the distribution of a quantity of the

1  substances equal to or in excess of the amount charged in

2  Count 1, or the distribution of at least a threshold quantity

3  of those substances alleged in Count 1 was reasonably

4  foreseeable to Mr. Latimer, and the same was within the scope

5  of his agreement and understanding.  Mr. Latimer faces a

6  mandatory minimum term of imprisonment of ten years, a maximum

7  of life, a fine of $10 million, supervised release of at least

8  five years, plus a special assessment fee of $100.

9          THE COURT:  All right.  Mr. Latimer, did you listen

10 carefully to the information presented as to the charge to

11 which you are offering to plead, the essential elements that

12 would have to be proven regarding that charge, and the

13 penalties that you may face?

14         DEFENDANT LATIMER:  Yes, sir.

15         THE COURT:  And did you understand the charge, the

16 elements the government would have to prove, and the penalties

17 that you may face?

18         DEFENDANT LATIMER:  Yes, sir.

19         THE COURT:  And understanding all of that do you

20 still wish to plead guilty?

21         DEFENDANT LATIMER:  Yes, sir.

22         THE COURT:  All right.  The Court finds for the

23 record that the Defendant Jamal Demarcus Latimer fully

24 comprehends and understands the nature of the charges against

25 him and generally what elements the government would have to

1    prove if a trial were held, as well as the penalties

2    associated with the offense.

3              All right.  Ms. Washington, as to Ms. Suber.

4              MS. WASHINGTON:  Yes, sir.  Ms. Suber is offering to

5    plead guilty to Count 29, that is conspiracy to commit money

6    laundering.  In Count 29 the grand jury charges that beginning

7    at a time unknown to the grand jury but beginning at least as

8    early as 2016, and continuing up to the date of the

9    superseding indictment in this District and elsewhere, that

10   Detric McGowan, Lauren Brooke Poore and Valencia Danielle

11   Suber knowingly and willfully did combine, conspire, agree,

12   and have tacit understanding with others both known and

13   unknown to the grand jury to:  1.A., to conduct and attempt to

14   conduct financial transactions affecting interstate and

15   foreign commerce which, in fact, involved the proceeds of a

16   specified unlawful activity, that is drug trafficking, knowing

17   that the property involved in the financial transactions

18   represented the proceeds of some form of unlawful activity,

19   and further knowing that the transactions were intended to

20   promote the carrying on of the specified unlawful activity in

21   violation of Title 18 U.S.C. § 1956(a)(1)(A)(i).

22             Secondly, to conduct and attempt to conduct financial

23   transactions affecting interstate and foreign commerce which,

24   in fact, involved the proceeds of a specified unlawful

25   activity, that is drug trafficking, knowing that the property

1   involved in the financial transactions represented the

2   proceeds of some form of unlawful activity, and further

3   knowing that the transactions were designed in whole and in

4   part to conceal and disguise the nature of the location, the

5   source, the ownership, and the control of the property in

6   violation of 1956, that's Title 18 1956(a)(1)(B)(i).

7           In Part C of Count 29, Your Honor, the grand jury

8   alleges that Ms. Suber and others did conduct and attempt to

9   conduct financial transactions involving interstate and

10  foreign commerce which, in fact, involved the proceeds of drug

11  trafficking knowing that the property involved in the

12  financial transactions represented the proceeds of some form

13  of unlawful activity, and further knowing that the

14  transactions were designed in whole and in part to avoid a

15  transaction reporting requirement under federal law.  That is

16  the requirement to report certain information about

17  transactions involving the receipt of more than $10,000 in

18  United States currency, and one transaction as required under

19  Title 31 in violation of Title 18 U.S.C. § 1956(a)(1)(B)(ii).

20          And in Section D of Count 29, the grand jury charges

21  that Ms. Suber and others did knowingly engage and attempt to

22  engage in monetary transactions by, through, or to a financial

23  institution affecting interstate and foreign commerce and

24  criminally derived property of a value greater than $10,000.

25  Such property having been derived from a specified unlawful

1  activity, that is drug trafficking, in violation of Title 18

2  U.S.C. § 1957.  The indictment alleges that all of the

3  offenses -- all of the different types of money laundering

4  offenses alleged in Count 29 all occurred in violation of

5  Title 18 U.S.C. § 1956(h).

6       Had the case proceeded to trial the government would

7  have to prove that an agreement between two or more persons to

8  commit one or more of the substantive money laundering

9  offenses alleged in the indictment was willfully formed and

10 was existing at or about the alleged time, and that the

11 defendant knowingly and involuntarily became a part of the

12 conspiracy.

13       Ms. Suber faces a maximum term of 20 years, a fine of

14 $500,000 or twice the value of the property involved,

15 supervised release of three years, plus a special assessment

16 fee of $100.

17       THE COURT:  Thank you.  Ms. Suber, did you listen

18 carefully to the information presented regarding the charge to

19 which you are offering to plead, the essential elements the

20 government would have to prove relative to that charge, and

21 the maximum possible penalties that you might face?

22       DEFENDANT SUBER:  Yes, sir.

23       THE COURT:  And do you understand the nature of that

24 charge, the essential elements the government would have to

25 prove, and the penalties you may face upon conviction?

1      DEFENDANT SUBER:  Yes, sir.

2      THE COURT:  And understanding all of that do you

3  still wish to plead guilty?

4      DEFENDANT SUBER:  Yes, sir.

5      THE COURT:  All right.  Based upon that, the Court

6  finds that the Defendant Valencia Danielle Suber fully

7  comprehends and understands the nature of the charges against

8  her and generally what elements the government would have to

9  prove if a trial were held, as well as the penalties

10  associated with the offense.

11      Now, earlier I indicated that by pleading guilty to

12  these charges you are going to be giving up certain important

13  rights and possible legal defenses that you may have under the

14  law.  At this time I want to go over those with you, and I'll

15  ask you to listen carefully as I do so.

16      Under the Constitution and laws of the United States,

17  you have a right to plead not guilty.  If you plead not guilty

18  you are entitled to a public and a speedy trial by a jury on

19  the charges contained in the indictment.  It does not matter

20  to this Court whether you plead guilty or not guilty.  If you

21  choose to plead not guilty and request a trial by jury, you

22  will also be entitled to a number of procedural rights as a

23  defendant in a criminal case.  You would have the right to the

24  assistance of counsel for your defense at every stage of your

25  case.  If you could not afford an attorney, one would be

1  appointed for you without cost to you.  Of course each of you

2  are currently being represented by very experienced and

3  competent legal counsel at this time, and I would expect that

4  they would remain with you through the trial of the case.

5          There is no burden of proof upon you whatsoever.  You

6  are presumed innocent of any and all charges until and unless

7  the government proves you guilty of each and every element of

8  the offenses charged beyond a reasonable doubt.  You would be

9  presumed innocent and the government would be required to

10  prove you guilty by competent evidence and beyond a reasonable

11  doubt before you could be found guilty, and you would not have

12  to prove of your innocence.

13          The witnesses for the government would have to come

14  to court and testify in your presence.  Your attorney would be

15  able to cross examine the government's witnesses and object to

16  evidence offered by the government.  And while there is no

17  burden of proof upon you, your attorney could offer evidence

18  on your behalf.  Again, while there is no burden of proof upon

19  you, if a trial were held you would have the right to testify

20  in your own defense.  You would also have the right to choose

21  not to testify.  And if you decided not to testify, I would

22  specifically inform and instruct the jury that no inference or

23  suggestion of guilt whatsoever could be drawn from the fact

24  that you did not testify.

25          You would have the right to the issuance of subpoenas

1  to compel the attendance of witnesses to come and testify in

2  your defense.  In other words, while there is no burden of

3  proof upon you, if a trial were held and you had witnesses

4  that you wanted to come to court and testify for you, this

5  Court will assist you and your attorney in having those

6  witnesses brought to court.

7          Finally, if a trial were held, in order for you to be

8  found guilty, the jury would have to reach a unanimous verdict

9  by all of the jury members.

10          Do you understand these important rights as I have

11  outlined them for you, Mr. Latimer?

12          DEFENDANT LATIMER:  Yes, sir.

13          THE COURT:  Ms. Suber?

14          DEFENDANT SUBER:  Yes, sir.

15          THE COURT:  If you plead guilty and I accept your

16  plea, you will be giving up your right to a jury trial and all

17  of the other rights I have just listed for you.  There will be

18  no trial, and I will enter a judgment of guilt and sentence

19  you on the basis of your guilty plea.  Do you understand,

20  Mr. Latimer?

21          DEFENDANT LATIMER:  Yes, sir.

22          THE COURT:  Ms. Suber?

23          DEFENDANT SUBER:  Yes, sir.

24          THE COURT:  If you plead guilty, you will also have

25  to give up your right not to incriminate yourself because I

Michele E. Becker, RMR, CRR, RPR
United States District Court
District of South Carolina

1   will ask you questions about what you did to satisfy myself

2   that you are, in fact, guilty as charged and will have to

3   acknowledge and admit your guilt.  Do you understand,

4   Mr. Latimer?

5          DEFENDANT LATIMER:  Yes, sir.

6          THE COURT:  Ms. Suber?

7          DEFENDANT SUBER:  Yes, sir.

8          THE COURT:  I don't know that it is an issue in your

9   case, but if it is, if you plead guilty and I accept your

10  plea, you may be required to make restitution to a victim or

11  victims of your acts either by payment of money or in personal

12  services as may be directed by this Court.  If restitution is

13  ordered in your case and you fail to comply, it may be the

14  basis for revoking any period of supervised release that could

15  be imposed as a part of your sentence.  Do you understand,

16  Mr. Latimer?

17         DEFENDANT LATIMER:  Yes, sir.

18         THE COURT:  Ms. Suber?

19         DEFENDANT SUBER:  Yes, sir.

20         THE COURT:  The offenses to which you are pleading

21  are felony offenses.  If your plea is accepted you may be

22  deprived of valuable civil rights, such as the right to vote,

23  to hold public office, to serve on a jury, and possess any

24  kind of firearm.  It may also affect your ability to receive

25  certain government benefits.  Do you understand, Mr. Latimer?

1            DEFENDANT LATIMER:  Yes, sir.

2            THE COURT:  Ms. Suber?

3            DEFENDANT SUBER:  Yes, sir.

4            THE COURT:  If the offense to which you are pleading

5    guilty carries a maximum sentence of 20 years or more, you

6    would be ineligible for any probationary sentence; do you

7    understand, Mr. Latimer?

8            DEFENDANT LATIMER:  Yes, sir.

9            THE COURT:  Ms. Suber?

10           DEFENDANT SUBER:  Yes, sir.

11           THE COURT:  If forfeiture is an issue in the case,

12   and I believe there are forfeiture provisions in this

13   indictment, if you plead guilty and I accept your plea I can

14   order you to forfeit certain property to the government, and

15   we will go over the provisions in your respective plea

16   agreements related to that.

17           But do you understand that I can order you to forfeit

18   certain property to the government, Mr. Latimer?

19           DEFENDANT LATIMER:  Yes, sir.

20           THE COURT:  Ms. Suber?

21           DEFENDANT SUBER:  Yes, sir.

22           THE COURT:  If you plead guilty, the Court is

23   obligated to impose a mandatory special assessment fee as to

24   each count of the indictment that you admit to, and that is

25   payable immediately upon sentencing.  That is the 100-dollar

1  special assessment fee that the Assistant U.S. Attorney

2  referenced when she stated the penalties for the offense.  Do

3  you understand that, Mr. Latimer?

4          DEFENDANT LATIMER:  Yes, sir.

5          THE COURT:  Ms. Suber?

6          DEFENDANT SUBER:  Yes, sir.

7          THE COURT:  If you plead guilty or if you are

8  convicted by a jury it is up to this Court to determine the

9  appropriate sentence to be imposed in this case.  In

10  determining an appropriate sentence, the Court is required to

11  consider the statutory sentencing factors set out in §~3553(a)

12  of Title 18 of the United States Code, and also the advisory

13  sentencing guidelines issued by the United Sentencing

14  Guidelines Commission.  Those guidelines are used as a

15  starting point in determining your sentence.

16          The Court is obligated to calculate the applicable

17  guideline range and to consider that range, as well as

18  possible departures under the sentencing guidelines and the

19  other statutory factors under 18 U.S.C. § 3553(a).  The Court

20  will also consider for purposes of sentencing, which include

21  punishment, deterrence, incapacitation and rehabilitation in

22  making its determination.  Do you understand, Mr. Latimer?

23          DEFENDANT LATIMER:  Yes, sir.

24          THE COURT:  Ms. Suber?

25          DEFENDANT SUBER:  Yes, sir.

1          THE COURT:  Now, have you and your attorney talked

2    about how the statutory factors of the advisory guidelines

3    might affect your sentence in this case, Mr. Latimer?

4          DEFENDANT LATIMER:  Yes, sir.

5          THE COURT:  Ms. Suber?

6          DEFENDANT SUBER:  Yes, sir.

7          THE COURT:  Do you understand that this Court will

8    not be able to determine the guideline range for your case

9    until after the presentence report has been completed by the

10   United States Probation Office, and both you and the

11   government have had an opportunity to challenge the reported

12   facts and the application of the guidelines recommended by the

13   probation officer who prepares that report, Mr. Latimer?

14         DEFENDANT LATIMER:  Yes, sir.

15         THE COURT:  Ms. Suber?

16         DEFENDANT SUBER:  Yes, sir.

17         THE COURT:  You understand that once it's been

18   determined what guidelines apply to your case, the Court has

19   the authority to impose a sentence more severe or less severe

20   than the sentence called for by the guidelines because those

21   guidelines are advisory, Mr. Latimer?

22         DEFENDANT LATIMER:  Yes, sir.

23         THE COURT:  Ms. Suber?

24         DEFENDANT SUBER:  Yes, sir.

25         THE COURT:  Do you understand that any sentence that

1    I may impose in your case may be different from and possibly

2    greater than any estimate your attorney or anyone else may

3    have given to you, Mr. Latimer?

4                  DEFENDANT LATIMER:  Yes, sir.

5                  THE COURT:  Ms. Suber?

6                  DEFENDANT SUBER:  Yes, sir.

7                  THE COURT:  In calculating the range of your sentence

8    under the advisory guidelines and determining an appropriate

9    sentence in your case, the Court will also take into account

10   all conduct, circumstances, and injuries associated with your

11   criminal conduct, whether or not that conduct is formally

12   charged by the government or was included in the counts you

13   are admitting to in the indictment.  The Court will consider

14   all relevant conduct at the time of sentencing.

15             There is no limitations on the information the Court

16   can consider at the time of sentencing concerning your

17   background, your character, and your conduct, so long as the

18   information is reliable.  The Court will take all of these

19   factors and information into consideration in determining an

20   appropriate sentence.  Do you understand that, Mr. Latimer?

21                  DEFENDANT LATIMER:  Yes, sir.

22                  THE COURT:  Ms. Suber?

23                  DEFENDANT SUBER:  Yes, sir.

24                  THE COURT:  You understand that parole has been

25   abolished, and that if you are sentenced to prison you will

1    not be released early on parole, Mr. Latimer?

2              DEFENDANT LATIMER:  Yes, sir.

3              THE COURT:  Ms. Suber?

4              DEFENDANT SUBER:  Yes, sir.

5              THE COURT:  Do you understand if your sentence is

6    more severe than you expected, you will still be bound by your

7    guilty plea and you will not have the right to withdraw it,

8    Mr. Latimer?

9              DEFENDANT LATIMER:  Yes, sir.

10             THE COURT:  Ms. Suber?

11             DEFENDANT SUBER:  Yes, sir.

12             THE COURT:  All right.  Now, in each of your cases it

13   is my understanding that you have entered into a written plea

14   agreement with the government.  I want to briefly go over

15   those with you at this time, so I'll ask your attorneys to

16   have a copy available for you to look at as we do so.

17             Mr. Latimer, I'm going to start with you, and I am

18   looking at a plea agreement that is dated October 14th, 2019.

19   It is Docket Entry Number 441.  And I'm going to ask you to

20   turn to Page 9, which I believe is the next to last page.  And

21   at the bottom of that page you will see some signature lines.

22   The very first signature line has underneath it:  Jamal

23   Demarcus Latimer, comma, Defendant.

24             Is that your signature, Mr. Latimer?

25             DEFENDANT LATIMER:  Yes, sir.

1          THE COURT:  And did you sign this document on
2    October 14th, 2019?
3          DEFENDANT LATIMER:  Yes, sir.
4          THE COURT:  And prior to your signing the document
5    did you have a full and complete opportunity to review the
6    plea agreement and study it and to discuss it with your
7    attorney?
8          DEFENDANT LATIMER:  Yes, sir.
9          THE COURT:  All right.  And did Ms. Rainey explain
10   the agreement to you and answer any questions you had about
11   it?
12         DEFENDANT LATIMER:  Yes, sir.
13         THE COURT:  Do you believe that you understand each
14   and every provision of the plea agreement?
15         DEFENDANT LATIMER:  Yes, sir.
16         THE COURT:  Did you enter into this plea agreement
17   freely, voluntary and knowingly?
18         DEFENDANT LATIMER:  Yes, sir.
19         THE COURT:  Are you asking me to approve and accept
20   the plea agreement?
21         DEFENDANT LATIMER:  Yes, sir.
22         THE COURT:  All right.  Ms. Suber, let's take a look
23   at your plea agreement.  I'm looking at a document that is
24   dated October 14th, 2019.  It is Docket Entry Number 440.  And
25   I'm going to ask you to turn to Page 9 which, again, I believe

                    Michele E. Becker, RMR, CRR, RPR
                       United States District Court
                        District of South Carolina

1  is the next to last page.  And there are signature lines at
2  the top of the page.  The first one has printed under it:
3  Valencia Danielle Suber, comma, Defendant.
4          Is that your signature above that line, Ms. Suber?
5          DEFENDANT SUBER:  Yes, sir.
6          THE COURT:  And did you sign this document on
7  October 14th, 2019?
8          DEFENDANT SUBER:  Yes, sir.
9          THE COURT:  Prior to your signing the document did
10  you have a full and complete opportunity to read the document,
11  to study it, and to go over it with your attorney?
12          DEFENDANT SUBER:  Yes, sir.
13          THE COURT:  And did he explain the agreement to you
14  and answer all of your questions about it?
15          DEFENDANT SUBER:  Yes, sir.
16          THE COURT:  Do you believe that you understand each
17  and every provision of the plea agreement?
18          DEFENDANT SUBER:  Yes, sir.
19          THE COURT:  Did you enter into the plea agreement
20  freely, voluntarily, and knowingly?
21          DEFENDANT SUBER:  Yes, sir.
22          THE COURT:  Do you want me to approve and accept this
23  plea agreement?
24          DEFENDANT SUBER:  Yes, sir.
25          THE COURT:  All right.  Mr. Latimer, beginning with

1  you, I want to make sure that your understanding of the plea

2  agreement is consistent with what the government says is in

3  the plea agreement.  So, at this time I'm going to ask the

4  Assistant U.S. Attorney to just briefly summarize the

5  provisions in your plea agreement, and I'm going to ask her to

6  skip the initial couple of paragraphs which simply relate to

7  the charges, elements, and penalties that we previously went

8  over.  Ms. Washington.

9          MS. WASHINGTON:  Yes, sir.  Beginning with

10  Paragraph 4 in each of the plea agreements -- and they're

11  virtually identical.  As we go through near the end I'll point

12  out the differences between the two.

13          THE COURT:  All right.  Ms. Suber, I'm going to ask

14  you if you will follow along as well.  And Ms. Washington, at

15  any point if the agreements are different, please specify as

16  to which defendant.

17          MS. WASHINGTON:  Yes, sir.

18          Beginning with Paragraph 4:  Each defendant agrees

19  that provided that he or she complies with the terms of the

20  agreement, each defendant understands that the government will

21  move to dismiss the remaining counts of the indictment at

22  sentencing.  Each defendant understands that the Court may

23  consider these dismissed counts as relevant conduct.

24          Each of the defendants understands that the

25  obligations of the government -- and I'm at Paragraph 5 -- in

1   each agreement are expressly contingent upon the defendants

2   abiding by federal and state laws and complying with any bond

3   executed in the case.  In the event a defendant fails to

4   comply with any of the provisions of the agreement, either

5   expressly or impliedly, the government will have the right at

6   its sole election to void all of its obligations under the

7   agreement.

8           Paragraph 6 and 7 calls for cooperation and

9   forfeiture.  Each defendant agrees to be fully truthful and

10  forthright with law enforcement about all criminal activities

11  about which he or she has knowledge at every stage of the

12  prosecution, and if asked, to take and pass a polygraph

13  examination to the government's satisfaction.  Each defendant

14  understands that his or her failure to be truthful and pass a

15  polygraph examination will result in the government's

16  obligations under the agreement to become null and void.

17  Should that occur, each defendant understands that he'll have

18  not right -- he or she will have no right to withdraw the plea

19  and all additional charges including but not limited to the

20  substantive offenses currently charged relating to this

21  investigation will be brought.  That the government will

22  pursue the maximum possible sentence for the offenses of

23  conviction.  Each defendant also understands that the

24  government will use any and all information and testimony

25  provided by the defendants pursuant to this agreement and any

1  and all proffer agreements in the prosecution of the
2  defendants of all charges.

3          Paragraph 8:  The government agrees that any
4  self-incriminating information provided by the defendants as a
5  result of cooperation required under the agreement will not be
6  used against the defendant in calculating his guidelines.
7  This information does not include information listed --
8  described in 8(a), (b), (c), (d), nor (e) of Paragraph 8 in
9  each agreement.

10          Paragraph 9:  Provided the defendants cooperate
11 pursuant to the provisions of the agreement and that
12 cooperation is deemed by the government as providing
13 substantial assistance in the investigation and prosecution of
14 another person, the government agrees to move the Court for a
15 sentence reduction persaunt to § 5K1.1 of the Guidelines, or
16 Rule 35(b) of the Federal Rules of Criminal Procedure.  Each
17 defendant understands that any motion made by the government
18 is not binding on the Court, and if the Court denies the
19 motion, the government -- the defendant will have no right to
20 withdraw his plea.

21          Paragraph 10:  And this stretches to Paragraph 11 for
22 Mr. Latimer.  It addresses forfeiture.  In Paragraph 10 and 11
23 for Latimer, but just 10 for Ms. Suber, the defendants agree
24 to voluntarily surrender and not to contest and also assist in
25 locating property subject to forfeiture, including substitute

assets.  And each defendant also consents to the entry of a
preliminary order of forfeiture incorporating such property as
mandated under the Rules of Criminal Procedure into the
judgment and to any judgment issued in his or her case.

Specifically as to Mr. Latimer, in Paragraph 11 he
agrees to voluntarily transfer all right, title, interest and
claim in any of the property listed in the superseding
indictment in the forfeiture allegation of the superseding
indictment, and any Bill of Particulars filed in the case.

Further, Mr. Latimer attests under penalty of perjury
that he owns any of the property described in the indictment
or Bill of Particulars, and that those assets are free of any
liens or encumbrances.  That no other person or entity has a
claim to any of the property described in the indictment, or
any Bill of Particulars filed in the case.

Beginning at Paragraph 11 for Ms. Suber and 12 for
Mr. Latimer:  Each defendant represents that he has had
sufficient opportunity to discuss this case and his or her
intended plea of guilty with the respective lawyers and is
fully satisfied with his or her attorney's legal
representation.  The defendants represent his decision to
plead guilty is made after full and careful thought, with the
advice of his attorneys, and is made freely and voluntarily.

Beginning in Paragraph 13 for Mr. Latimer and
Paragraph 12 for Ms. Suber:  Each defendant understanding that

1   he retains the right to challenge his conviction and/or

2   sentence based on grounds of prosecutorial misconduct or

3   ineffective assistance of counsel; each Defendant in exchange

4   for the concessions made by the government knowingly and

5   voluntarily waives the right to file a direct appeal or other

6   post conviction action including proceedings under 18 U.S.C.

7   § 3742, or a motion under 28 U.S.C. § 2255 that challenges the

8   conviction or sentence imposed by the Court.  Each Defendant

9   understands that this waiver does not apply to changes in the

10  law that may affect his or her sentence.

11          Paragraph 14 for Mr. Latimer and 13 for Ms. Suber:

12  Each defendant waives his or her rights under the Freedom of

13  Information Act to directly or indirectly request or receive

14  records regarding the investigation or prosecution of his or

15  her case.

16          And lastly, the final paragraph in each agreement

17  represents to the Court that this is -- I've summarized the

18  entire agreement between the parties.  And the agreements

19  filed with the Court represent the entire agreement between

20  the government and each, Mr. Latimer and Ms. Suber.

21          THE COURT:  Thank you.  Mr. Latimer, you have heard

22  the prosecutor go over these material provisions of your plea

23  agreement.  Is her description of those provisions consistent

24  with your understanding of the agreement?

25          DEFENDANT LATIMER:  Yes, sir.

1         THE COURT:  All right.  Specifically, I had indicated

2  earlier that I would go over with you the forfeiture

3  provisions.  And I believe in your agreement it's Paragraphs

4  10 and 11.  You agree that you will not contest and that you

5  will voluntarily surrender any property that is subject to

6  forfeiture under the law.  And then in Paragraph 11, I believe

7  you further agree that you will voluntarily transfer title to

8  the government of any such property.  Do you understand that

9  forfeiture provision?

10         DEFENDANT LATIMER:  Yes, sir.

11         THE COURT:  All right.  And then with respect to

12  Paragraph 13 of your agreement, you have what is called an

13  appellate waiver.  Specifically, you state that you are aware

14  that federal law gives you certain appeal rights to appeal

15  your conviction and sentence, both directly and through

16  certain post conviction relief mechanisms.  And in exchange

17  for the concessions made by the government in this agreement,

18  you are waiving your rights to appeal or to engage in a post

19  conviction relief remedy under that statute.  The only thing

20  you are retaining is the right to make a claim of ineffective

21  assistance of counsel, prosecutorial misconduct, or if there's

22  some subsequent change in the law that would affect your

23  sentence in some way.

24         Do you understand that you are waiving your rights to

25  appeal in that manner?

1        DEFENDANT LATIMER:  Yes, sir.

2        THE COURT:  All right.  Ms. Suber, did you listen

3   carefully as the prosecutor went over the material terms of

4   your plea agreement?

5        DEFENDANT SUBER:  Yes, sir.

6        THE COURT:  And was her description of those terms

7   consistent with your understanding?

8        DEFENDANT SUBER:  Yes, sir.

9        THE COURT:  And do you understand that in

10   Paragraph 10 of your agreement you are agreeing to forfeit

11   certain property that may be subject to forfeiture pursuant to

12   law?

13        DEFENDANT SUBER:  Yes, sir.

14        THE COURT:  Do you understand in Paragraph 12 that

15   you have also entered into an appellate waiver, that is that

16   you recognize that you are entitled to appeal your conviction

17   or sentence in this matter, but you are waiving your right to

18   any direct appeal and certain post conviction remedies in

19   exchange for the concessions being made by the government, and

20   that only claims of ineffective assistance of counsel,

21   prosecutorial misconduct, or future changes in the law that

22   might affect your sentence can be raised; do you understand

23   that you are waiving those appeal rights?

24        DEFENDANT SUBER:  Yes, sir.

25        THE COURT:  All right.  If you plead guilty and I

1  accept your plea, the law provides that upon your release from

2  incarceration you will be subject to a term of supervised

3  release.  Once you are placed on supervised release, you will

4  be under a court order that will prescribe rules for your

5  conduct while you are on supervised release.  If you violate

6  any term or condition of supervised release, you can be given

7  additional time in prison.  Do you understand, Mr. Latimer?

8              DEFENDANT LATIMER:  Yes, sir.

9              THE COURT:  Ms. Suber?

10             DEFENDANT SUBER:  Yes, sir.

11             THE COURT:  Has anyone forced you, threatened you, or

12  pressured you, in any way to plead guilty, Mr. Latimer?

13             DEFENDANT LATIMER:  No, sir.

14             THE COURT:  Ms. Suber?

15             DEFENDANT SUBER:  No, sir.

16             THE COURT:  Other than the provisions in your plea

17  agreement, the concessions of the government in your plea

18  agreement, has anyone promised you anything in order to get

19  you to plead guilty, Mr. Latimer?

20             DEFENDANT LATIMER:  No, sir.

21             THE COURT:  Ms. Suber?

22             DEFENDANT SUBER:  No, sir.

23             THE COURT:  Has anyone made any type of prediction,

24  promise, or guarantee to you about what your sentence will be

25  in this case if you plead guilty, Mr. Latimer?

1          DEFENDANT LATIMER:  No, sir.

2          THE COURT:  Ms. Suber?

3          DEFENDANT SUBER:  No, sir.

4          THE COURT:  Are you pleading guilty of your own free

5    will because you are, in fact, guilty, Mr. Latimer?

6          DEFENDANT LATIMER:  Yes, sir.

7          THE COURT:  Ms. Suber?

8          DEFENDANT SUBER:  Yes, sir.

9          THE COURT:  All right.  At this time I'm going to ask

10   the Assistant United States Attorney to summarize the evidence

11   and facts the government would be prepared to prove at trial

12   as to the counts you are pleading guilty to so as to establish

13   an independent factual basis for the offense to which you are

14   pleading guilty.  Ms. Washington.

15         MS. WASHINGTON:  Your Honor, the investigation that

16   culminated in the arrest of these two defendants began as

17   early as 2016 in Greenwood County.  Local law enforcement

18   identified Detric McGowan and others in and around Greenwood

19   County as individuals responsible for the distribution of

20   kilogram quantities of cocaine, heroin and Fentanyl.  The

21   heroin and Fentanyl was primarily distributed in pill form.

22         On September 26th,2018, unrelated to the Greenwood

23   County investigation, a confidential source alerted DEA agents

24   in Las Cruces, New Mexico -- and when I say unrelated I mean

25   that the DEA agents in Las Cruces, New Mexico were not working

1   with Greenwood County.  DEA agents contacted agents here in

2   this District and notified them that Mr. Latimer had contacted

3   a Mexico based source in search of ten kilograms of cocaine

4   and ten kilograms of China white heroin.  China white is a

5   term used to refer to pure or high grade heroin and heroin

6   mixed with the synthetic opioid Fentanyl.

7           Agents acting in an undercover capacity as

8   intermediaries between the Mexico based source invited

9   Mr. Latimer to an in-person meeting to hammer out the deal.

10   At the October 3rd, 2018, meeting in El Paso, Texas, Mr.

11   Latimer negotiated the delivery of ten kilograms of cocaine at

12   28,000 per kilogram, and ten kilograms of China white heroin

13   at 48,000 per kilogram, for a total cost of $760,000 to be

14   delivered to Greenville on or about October 23rd, 2018.

15           On that date, October 23rd, surveillance agents

16   observed Thomas, that is Donald Thomas, who was a

17   coconspirator named in Count 1 and has pled guilty before this

18   Court, Latimer and Christopher Cunningham, also a

19   co-conspirator, arrive and take what appeared to be carry-on

20   size luggage and a duffle bag into an apartment in Mauldin,

21   South Carolina.

22           After the individuals inside the apartment pooled and

23   counted money, three men departed the complex.  And as

24   Latimer, who was driving the lead car, exited the parking lot

25   and got onto 85 en route to the agreed upon location to

1   conduct the transaction with, at the time, what he thought

2   were sources from Texas, once Mr. Latimer got on -- exited the

3   parking lot and got onto Interstate 85, DEA agents arranged a

4   traffic stop by the Highway Patrol.  During the stop the

5   vehicles were searched.  Mr. Latimer's vehicle was not

6   stopped, but the two vehicles that followed him -- that were

7   following him were.  One of those vehicles was driven by

8   Mr. Cunningham.  During a search of Mr. Cunningham's vehicle

9   officers seized, located and seized a substantial amount of

10  cash from Mr. Thomas' vehicle.  The officers seized

11  approximately $245,880.  And from Mr. Cunningham's vehicle the

12  officers seized $758,000 or approximately $758,000.  While the

13  searches were being conducted by the highway patrol, agents

14  observed Latimer and McGowan as they positioned themselves in

15  a hotel parking lot -- parking lot facing -- backing up to the

16  hotel but facing Interstate 85 to watch as the cars were

17  stopped and searched.

18          On March 8th -- after Mr. Latimer was arrested at the

19  end of February 2019 -- Mr. Latimer sat for an interview.  He

20  admitted his involvement in the conspiracy.  He also admitted

21  what agents had already noted, that he also supplied

22  individuals in North Carolina with heroin and Fentanyl.

23  During the investigation the agents were able to obtain

24  authorization to tap or intercept calls over Mr. Latimer's

25  phone or phones used by Mr. Latimer, and a phone used by

1    Mr. McGowan.  During the interception over those phones the

2    agents were able to confirm that Mr. Latimer had supplied an

3    individual in North Carolina, Deandre Miles, with

4    approximately 900 grams of a substance containing Fentanyl,

5    heroin, and ANPP.  On or about December 18th, 2018, during

6    interception primarily over Mr. Latimer's phone, the agent

7    heard Latimer and Thomas discuss the arrest of Mr. Miles in

8    the Charlotte area.  Mr. Latimer also admitted that he acted

9    as a courier from time to time for Mr. Thomas, during which he

10   would deliver kilogram quantities of cocaine to individuals

11   being supplied Mr. Thomas in the North Carolina area.

12   Mr. Latimer admitted to at least distributing 5 kilograms of

13   cocaine at Mr. Thomas' direction to individuals in North

14   Carolina.  That information has been corroborated by other

15   cooperating defendants.

16          Specifically, with regard to Ms. Suber, Judge, in

17   addition to the October 23rd currency seizure, on February

18   26th, at the time of his arrest, Mr. McGowan was found in

19   possession with about $590,000 in cash.  In addition, a

20   financial investigation determined that Mr. McGowan and

21   Ms. Poore conducted over $400,000 in unexplained cash

22   transactions through a financial institution with whom they

23   held accounts.  Had Ms. Suber's case gone to trial -- and,

24   Judge, she's charged in Count 29 in the money laundering

25   conspiracy with Mr. McGowan and Ms. Poore.  Had Ms. Suber's

1   case gone to trial, the government would be relying as

2   evidence, wiretap calls between Mr. McGowan and Ms. Suber,

3   Mr. McGowan and others.  An analysis or financial analysis of

4   Mr. McGowan's legitimate income.  An analysis of his

5   unexplained wealth and the amount of cash transactions which,

6   as I stated, amounted to over $400,000.  Testimony from an

7   expert who would testify that cash in and of itself or the use

8   of cash is a method of concealment, as cash is not easily

9   traceable.  Mr. McGowan's now admitted involvement in drug

10  distribution during the same period as the transactions

11  alleged in Counts 35 through 41, and 45 against Ms. Suber.

12  That those transactions were conducted with drug trafficking

13  proceeds.  The government believes that based on that evidence

14  it would be able to prove Suber's knowledge, either actual

15  knowledge or her deliberate ignorance, that the cash

16  transactions she conducted as described in Count 35 through 41

17  and 45 were conducted with drug trafficking proceeds.

18          Judge, it was part of the money laundering conspiracy

19  that Mr. McGowan's source, the source of his income or source

20  of the property he used to conduct -- or he and others used to

21  conduct the transactions would be concealed.  The government

22  intercepted multiple conversations between Mr. McGowan and

23  Ms. Suber during which Mr. McGowan reminded, advised, and

24  sometimes instructed Ms. Suber against depositing large sums

25  of money, specifically limiting her transactions to under

1  $10,000, which would trigger a federal reporting requirement.

2          The evidence that Ms. Suber took those instructions

3  to heart are documented in Counts 35 through 41 of the

4  superseding indictment.  Those transactions list deposits,

5  cash deposits made by Ms. Suber into Bank of America accounts

6  in amounts less than 5,000 dollars each.  However, the

7  transactions were either conducted on the same day or the day

8  after.  In Counts 36 and 37, Ms. Suber deposited just short of

9  $10,000 into an account that was used to pay the rent on a

10 building that Ms. Suber and Mr. McGowan rented to house a bar

11 and grill.

12         In Counts 38 and 39, both transactions occurred on

13 January 8th.  However, they were separate transactions.  One

14 is a cash deposit of $5,000 into a bank account, and the

15 second transaction that occurred on January 8th is a

16 5,000-dollar payment, rent payment to the landlord for the

17 building that housed the bar and grill.

18         In Count 45, Your Honor, the spending provision of

19 the money laundering offense, the purchase which was also a

20 structured purchase, two transactions to purchase a

21 15,000-dollar cashier's check that was used to pay first

22 months rent, and a security deposit on that same building that

23 was used or rented to house the bar and grill in which both

24 Mr. Suber -- Ms. Suber and Mr. McGowan had an interest.

25         The government believes that based on the evidence

1  that I've just kind of summarized, it would be able to show

2  that Ms. Suber not only conducted the cash transaction,

3  primarily at Mr. McGowan's request, but that she knew at the

4  time that she conducted the transactions, that the

5  transactions were being conducted with proceeds of some

6  specified unlawful activity.  The government alleges drug

7  trafficking.  And that the transactions were conducted to

8  conceal the source, nature -- the true source and nature of

9  the property that was being used to conduct the transactions.

10 Specifically as to Count 45, the government would be able to

11 show that the $15,000 that Ms. Suber used to purchase the

12 cashier's check for the security deposit and rent for the

13 building that housed Legends Bar and Grill was in an amount in

14 excess of $10,000, and the $15,000 that purchased that check

15 was proceeds of drug trafficking.

16         THE COURT:  All right.  Thank you.  Mr. Latimer, let

17 me begin with you.  Did you listen carefully to the

18 prosecutor's summary, general summary of the facts of the case

19 and more specifically what the government says you did

20 relative to Count 1 of the indictment to which you are

21 pleading?

22         DEFENDANT LATIMER:  Yes, sir.

23         THE COURT:  All right.  With respect to Count 1 of

24 the superseding indictment which you are pleading, do you

25 agree with the prosecutor's summary of what you did in

1  violation of that law?

2          DEFENDANT LATIMER:  Yes, sir.

3          THE COURT:  Do you disagree with anything the

4  prosecutor said about what you did relative to that charge?

5          DEFENDANT LATIMER:  No, sir.

6          THE COURT:  Is there anything else that you would

7  like to tell me about what you did before I determine whether

8  or not to accept your plea?

9          DEFENDANT LATIMER:  No, sir.

10         THE COURT:  All right.  Are you pleading guilty

11 because you are, in fact, guilty of the conduct charged in

12 Count 1 of the superseding indictment?

13         DEFENDANT LATIMER:  Yes, sir.

14         THE COURT:  All right.  Ms. Suber, did you listen

15 carefully to the prosecutor's general summary of the facts of

16 the case, and more specifically to what the government says

17 you did relative to Count 29 of the superseding indictment,

18 the conspiracy to commit money laundering charge?

19         MR. BREHM:  Can I have one second, Your Honor?  She

20 was trying to tell me something.

21         THE COURT:  Okay.

22         MR. BREHM:  She does take exception to one thing.

23         DEFENDANT SUBER:  One thing.  I was unaware of the

24 drug trafficking.  To my knowledge the money that I received

25 to -- on my bar came from two other clubs that he owned.  I'm

1  totally unaware of any type of drug trafficking that was going
2  on.

3      MR. BREHM:  Judge, as I've discussed this with the
4  government, she admits that she knew that the proceeds were
5  illegal.  He had two clubs.  Her understanding was is that the
6  transactions, the money was coming to her from the clubs as
7  cash, and he was tying to get a way around the reporting
8  requirements.  I've discussed that with the government.

9      THE COURT:  All right.  Well, here's my only concern,
10 Ms. Suber.  My concern is that you are freely, voluntarily,
11 and knowingly pleading guilty to the facts set out with regard
12 to Count 29 of the superseding indictment, which is a charge
13 of conspiracy to commit money laundering.  That requires you
14 to know or understand that the proceeds came from some illegal
15 activity, or to have made yourself willfully blind to such
16 knowledge when a reasonable person would know that.  Now, the
17 specific nature of that I understand you may quibble about.

18     So, if I understand counsel's representation, you
19 freely and voluntarily admit that you knew or believed these
20 funds were coming from an illegal activity when you engaged in
21 these transactions; is that correct?

22     DEFENDANT SUBER:  Yes.

23     THE COURT:  All right.  And based upon that are you
24 pleading guilty to the violation of that statute under that
25 count of the superseding indictment because you are, in fact,

1   guilty of that conduct?

2          DEFENDANT SUBER:  Yes, sir.

3          THE COURT:  All right.  Other than your dispute with

4   respect to your knowledge of the specific nature of the

5   illegal activity, is there anything else you disagree with or

6   anything else that you would like to tell me before I

7   determine whether or not to accept your guilty plea?

8          DEFENDANT SUBER:  No, sir.

9          THE COURT:  All right.

10          MR. BREHM:  Judge, I do have one item that I want to

11  bring to the Court's attention, just so it doesn't come back

12  to bite us.  As you've been made aware, my client started a

13  nightclub.  She, as a result of these charges, wanted to get

14  rid of the nightclub as it was causing her nothing but

15  problems.  And last month she entered into an agreement to, in

16  fact, transfer the ownership of that club to someone else.

17  She does not own the building.  It's my understanding that --

18  I don't think there's any monetary value to that that she

19  would have, or ownership she would have.  It would be subject

20  to being forfeited.  I just want the Court to be made aware,

21  the government to be made aware of, that was something that

22  she brought to my attention when she signed the plea agreement

23  that she's trying to get rid of that club.

24          THE COURT:  All right.  Well, that's an issue, and

25  I'll be happy to hear from the government, but that's really

1   an issue for determination prior to submission of a

2   preliminary order of forfeiture, and subject to the Court's

3   determination at sentencing prior to any final disposition of

4   the case.

5        Ms. Washington, is there anything that you'd like to

6   be heard on at this point in the proceeding?

7        MS. WASHINGTON:  Your Honor, may we approach just

8   briefly?

9        (Bench conference off the record.)

10       THE COURT:  All right.  Ms. Suber, I apologize.  We

11  digressed a little bit on the forfeiture issue.  I just want

12  to make sure for the record was there anything else you wanted

13  to tell me about what you did in this case?

14       DEFENDANT SUBER:  No, sir.

15       THE COURT:  Thank you, ma'am.  All right.  Based upon

16  the information presented, I do find that there is a factual

17  basis for the guilty pleas by each of these defendants.

18       With respect to Mr. Latimer, I find that his plea of

19  guilty is being made freely, voluntarily, and knowingly with

20  the advice and assistance of counsel, and is supported by

21  independent basis in fact containing each of the essential

22  elements of the offense to which he has pled guilty.

23  Accordingly, his plea of guilty is hereby accepted pursuant to

24  the terms of the plea agreement that has been entered in this

25  case, and he is adjudged guilty of the offense charged.

1  Mr. Latimer, I would now refer you to the United States

2  Probation Office in preparation of your presentence report,

3  and directing you to cooperate with them for that purpose.

4  Once that report is prepared, both you and your attorney will

5  have an opportunity to review it, make any objections to it

6  that you deem appropriate.  Once that process is complete we

7  will schedule a sentencing hearing in your case.  I believe

8  that there is an additional matter that your attorney wants to

9  take up, so I'm going to ask you to hang with us for just a

10 moment.  We'll get to that.

11         Ms. Suber, with respect to your situation I find that

12 your plea of guilty is also being made freely, voluntarily,

13 and knowingly, with the advice and assistance of counsel, and

14 is supported by an independent basis in fact containing each

15 of the essential elements of the offense to which you have

16 pled.  Accordingly, your plea of guilty is hereby accepted

17 pursuant to the terms of the plea agreement you have entered

18 into with the government in this case, and you are adjudged

19 guilty of the offense to which you have pled.  You are now

20 referred to the United States Probation Office for preparation

21 of your presentence report, and I'm directing you to cooperate

22 with them for that purpose.  Once that report is completed and

23 both you and your attorney have had an adequate opportunity to

24 review it and make any objections to it that you deem

25 appropriate, we will schedule a sentencing hearing in your

1  case.

2         Let me hear from Pretrial Services.  Have there been

3  any issues with respect to Ms. Suber on her bond?

4         PROBATION OFFICER:  No, Your Honor.

5         THE COURT:  All right.  Any objections from the

6  government as to continuing her bond pending sentencing?

7         MS. WASHINGTON:  No, sir.

8         THE COURT:  All right.  Ms. Suber, I'm going to allow

9  you to remain on bond pending your sentencing hearing.  I will

10 tell you that all of your conditions of bond continue in

11 effect.  Any violation of your bond will come back to me, not

12 the magistrate judge.  And any violation of your bond will

13 result in you being incarcerated pending your sentencing

14 hearing.  So, just keep doing what you're doing.  Follow all

15 the provisions of your bond.  And we will schedule a

16 sentencing hearing at an appropriate time.

17         Anything further regarding Ms. Suber from the

18 government?

19         MS. WASHINGTON:  No, Your Honor.

20         THE COURT:  Anything further from Defense?

21         MR. BREHM:  No, sir, Your Honor.

22         THE COURT:  All right.  That concludes this matter.

23 Thank you very much.

24         All right.  Before we get onto anything else, let's

25 wind up Mr. Latimer here.  Ms. Rainey, I understand there's an

1    issue you wish to address.

2         MS. RAINEY:  Yes, Your Honor.  We understand that the

3    Court follows the Mandatory Detention Act.  We would ask that

4    Mr. Latimer be allowed to remain on bond due to exigent

5    circumstances.  I know the Court is very aware that

6    Mr. Latimer was a victim, a potential victim in a conspiracy

7    earlier with the primary defendant in this case, Mr. McGowan.

8    I'm sure you're familiar with how Spartanburg County is set

9    up.  There's only two pods actually for male defendants.

10   Cannot guarantee that Mr. Latimer would not be exposed to

11   Mr. McGowan or some person related to Mr. McGowan.  I believe

12   that it is in his best interest that he remain on bond.

13        Your Honor, he's been completely compliant with bond,

14   not a problem at all.  And his bond is very restrictive in

15   that he is completely house ridden.  He can only go to

16   doctors' appointments.  And as you've heard he's no longer

17   under doctor's care, so he only comes to see me.  I don't know

18   if the Court is aware that there was earlier, I guess earlier

19   this year at his former residence, an actual drive-by

20   shooting, where we verily believe that he was the intended

21   recipient.  So, considering all of that, Your Honor, we would

22   just ask that he be allowed to remain on bond.  As I said

23   earlier, he has not had one complaint from Mr. Shaw as it

24   relates to bond.  He only comes to see me and that is very

25   rare.  So, I believe that it is in his best interest and for

1  his safety that he be allowed to remain on bond.

2         THE COURT:  All right.  Let my hear from Pretrial

3  regarding his current terms of bond.

4         PROBATION OFFICER:  It's my understanding we have no

5  issues on bond at this time.

6         THE COURT:  Is he on GPS and house arrest?

7         PROBATION OFFICER:  The agent is here, Your Honor.

8         THE COURT:  Okay.  Let me hear from him.  I'm sorry,

9  I'm looking at the wrong person.

10        Is he on GPS and house arrest?

11        PROBATION OFFICER:  That's correct.  He is on GPS and

12 home detention.

13        THE COURT:  Home detention?

14        PROBATION OFFICER:  That's correct.

15        THE COURT:  All right.

16        PROBATION OFFICER:  Judge Austin, I believe, had the

17 bond ordered.  But, I mean, I believe she specifically noted

18 that he is only allowed out for medical purposes.

19        MS. WASHINGTON:  And legal purposes.

20        PROBATION OFFICER:  And legal purposes.

21        THE COURT:  All right.  Ms. Washington.

22        MS. WASHINGTON:  Judge, this issue came up with a

23 similarly situated Defendant, Mr. Thomas, who was also a

24 threat -- a victim -- or a threat was lodged against his life

25 as well while out on pretrial supervision.  The government's

1   position is that the defendant, he and both Mr. Thomas are far

2   safer in the custody of the Marshals Service held at

3   Spartanburg County Detention Center.  When the threat was made

4   against Mr. Latimer, Mr. Latimer was at home out on the

5   street.  He had no additional layers of protection.  At least

6   if he is housed in the Spartanburg County Detention Center he

7   will be in their custody and he will have some protection, the

8   protection afforded by workers, the staff at the Spartanburg

9   County Detention Center.

10          Mr. McGowan is housed there.  It's my understanding

11  from the Marshals Service that he is housed in a unit where he

12  has limited contact with other individuals.  The government

13  believes that if safety is a concern, that he is safer behind

14  the walls of the Spartanburg County Detention Center separate

15  and away from Mr. McGowan than he is at home.  The threat that

16  was made against this defendant and the other defendant was to

17  be carried out by somebody on the outside, somebody who was

18  going to get out on the outside.  The government's position is

19  that he's putting himself in a less safe position if the Court

20  should allow him to remain out on bond rather than revoking

21  his bond under the Mandatory Detention Act that specifically

22  applies to his case.

23          THE COURT:  All right.

24          MS. RAINEY:  Your Honor, if I may.

25          THE COURT:  Ms. Rainey, let me ask you this.  Who

1  resides with Mr. Latimer?

2          MS. RAINEY:  His mother.  And, Your Honor, just to

3  respond.  They have moved to a new place.  When he was out

4  during, you know, during that threat, he has been in this home

5  under house arrest since I think April.  The concern that I

6  have with Spartanburg County is there is one officer per pod

7  per, you know, shift.  I've gone in there and I've not felt

8  safe.  So, I understand what Ms. Washington has said, but

9  there is an open space, open exposure.  We don't know who from

10 Greenwood knows Mr. Latimer.  AUSA, Mr. Jim May, when I first

11 spoke with him, he informed me that Mr. Latimer in

12 Mr. McGowan's opinion was public enemy number one.  So, I

13 don't know what reach Mr. McGowan has.  I understand what

14 Ms. Washington has said, but it's certainly our position that

15 he is in a place where he's safe, where he has really no

16 contact with the outside except for Mr. Shaw and myself

17 really, in all reality.  So, we believe under those

18 circumstances that he is in a better position on the outside

19 than he would at Spartanburg County.

20         THE COURT:  All right.  Let me see Pretrial Services

21 off the record.

22         (Bench conference off the record.)

23         THE COURT:  All right.  The Assistant U.S. Attorney

24 is correct.  This issue has come up with respect to another

25 defendant in this case.  And I'm going to say in this case

1    what I said in that case.  It's a very close call.  I do agree

2    that there is some risk to Mr. Latimer to have him housed in

3    Spartanburg.  But I could have him housed in Anderson for that

4    matter.  On the other hand, there's an argument to be made

5    that in custody where people associated with this case or

6    associated with Mr. McGowan may be present and might have more

7    ready access to Mr. Latimer, creates a greater danger.  That

8    argument is there.  I do find as I did in Mr. Thomas' case

9    that the safety of the defendant, in this case Mr. Latimer, is

10   an exceptional circumstance or extraordinary circumstance

11   within the meaning of the exception to the Mandatory Detention

12   Act.

13          I'm reluctant to allow Mr. Latimer to stay out

14   because of the nature of these charges and because but for the

15   previous threat there would be no question that he would be

16   going into custody.  However, I want to be consistent, and so

17   I'm going to try to structure my ruling in a way that will be

18   consistent.  As I indicated, I have found that this

19   essentially death threat that existed earlier in this case

20   does constitute exceptional circumstances.  As a result of

21   that, although it's a close question, I will find in this case

22   as I did in Mr. Thomas' case that Mr. Latimer is likely to be

23   more secure with the status quo than by being taken into

24   custody where other members of this conspiracy may be housed.

25          Now, having said that, I'm going to change the

1    conditions of your bond somewhat in that I'm going to more

2    formally change this from home detention to house arrest.

3    What that means is, this is essentially being incarcerated at

4    home.  You'll be monitored on GPS as you are now.  I will

5    allow you to travel as necessary to confer with your lawyer.

6    It is my understanding that as of this time you have no

7    regularly scheduled medical appointments; is that correct?

8            DEFENDANT LATIMER:  Yes, sir.

9            THE COURT:  All right.  So, the only exception I'm

10   going to allow is for legal consultation.  If anything else

11   comes up, if you have any type of medical condition other than

12   a medical emergency, if you have any other issue, it is going

13   to have to come back before me before it can be approved.  And

14   I will tell you right now it will have to be extraordinary for

15   me to approve it.

16           Now, with respect to medical, since I'm taking away

17   what was there from Magistrate Judge Austin's order, I want to

18   make clear to pretrial, if it's a medical emergency, you know,

19   if you cut yourself, you've got to go to the emergency room.

20   They don't have to come find me for that.  But anything beyond

21   an emergency, or your consultation with your attorney, has to

22   be preapproved by this Court.  Understood?

23           DEFENDANT LATIMER:  Yes, sir.

24           THE COURT:  All right.  Any questions from Pretrial?

25           PROBATION OFFICER:  No, Your Honor.  I would request

1  that we change the wording from house arrest to home

2  incarceration.

3        THE COURT:  That's -- whatever the necessary

4  semantics are, we will make our order accordingly.

5        PROBATION OFFICER:  Thank you, Your Honor.

6        THE COURT:  All right.  Anything further, Ms. Rainey?

7        MS. RAINEY:  No, sir.

8        THE COURT:  Anything further, Ms. Washington?

9        MS. WASHINGTON:  No, sir.

10        MS. RAINEY:  No, sir.

11        THE COURT:  That concludes this matter.  Thank you.

12  (Further proceedings were held but not transcribed at this

13  time.)

14        (Court adjourned at 4:28 p.m.)

15

16

17                    CERTIFICATE

18  I,  Michele E. Becker, certify that the foregoing is

19  a correct transcript from the record of proceedings

20  in the above-entitled matter.

21

22  /s/  Michele E. Becker          Date:  02/28/2020

23

24

25

                Michele E. Becker, RMR, CRR, RPR
                  United States District Court
                   District of South Carolina